McMillan, judge.
This case concerns a revocation of probation. The appellant, Darrell Ray Henry, Jr., had originally been convicted pursuant to a guilty plea to burglary in the third degree on June 22, 1994. He had been sentenced to two years’ imprisonment; that sentence was suspended and he was plaeed on three years’ probation. The appellant was subsequently charged with two probation violations and his probation was modified, following a probation revocation hearing. Thereafter, the appellant’s probation officer filed another delin *1003 quency report, charging the appellant with violating his probation by committing two new offenses — the unlawful possession of a pistol after having been convicted of a crime of violence and menacing. The trial court issued an order for an alias warrant based on those two charges.
At the commencement of the revocation hearing relating to these latter two charges, the appellant’s attorney indicated that these charges had been filed against his client in a municipal court but had not yet been resolved. The State then presented evidence through the appellant’s probation officer that the appellant had been informed of the conditions of his probation and that the officer had maintained supervision over the appellant at the time of the offenses. The State then presented the testimony of a 12-year-old witness who stated that, on the day of the offenses, he and six friends were on Cawthon Street in Andalusia. He testified that one of these boys, C.M., began running and the appellant then pulled up in an automobile next to the group. The appellant, whom the witness knew, asked who had just run away. The witness testified that he told the appellant that he did not know who it was, because he knew that C.M. and the appellant had “had problems before,” and he wanted to protect his friend. The appellant then stated, “I bet it was C.M.,” to which the witness responded negatively. He testified that the appellant then pulled a “little” gun from his pants and stated that he was going either to kill C.M. or to put him in the hospital. The appellant then stated, “If I ever catch y’all hanging out with C.M. or telling him what I have told you, I’ll kill y’all, too.” He later testified that the appellant stated that he would do the same to the boys he planned to do to C.M., that is, kill them or put them in the hospital. A friend of the appellant then came running towards the group, stating that he had seen C.M., and the appellant and his friend jumped in the car and drove off. The witness testified that the appellant drove around the block and stopped by the group of boys a second time. He then stated that he swore “on [his] baby’s life” that he was either going to kill C.M. or put him in the hospital, and he began banging the roof of the car with his fists. The appellant then drove away, and the witness went home and told his mother about what had happened. She telephoned the police. On cross-examination, the witness testified that the appellant had held the gun for approximately five minutes while making his threats. He testified that he did not point the gun at the witness or his friends, but that he became frightened when the appellant threatened them if he were to catch them with C.M.
The officer who responded to the call testified at the hearing that he went to the scene to investigate the claim that the appellant was threatening some juveniles with a gun. The officer testified that, when' he apprehended the appellant, he asked if the appellant had a gun on his person; he responded that he did not. The officer asked if the appellant would allow him to search his vehicle, to which the appellant responded that he would not. However, the officer testified that when he did search the vehicle he found a gun under the driver’s seat and he arrested the appellant. He testified that he asked the appellant whether he had a permit for his pistol, to which he responded that he did not. The officer testified that, at that time, he charged the appellant with possession of a pistol without a license and for being in possession of a pistol when he was forbidden to possess a pistol. After the presentation of this evidence, defense counsel argued that the State had failed to prove that the appellant would fall into the category of “certain persons prohibited to possess a pistol” because it had failed to prove that the appellant’s original offense of burglary in the third degree was a crime of violence; they also argued that the State had failed to prove the offense of menacing because the juvenile victim had testified that he did not.believe that the appellant was going to shoot him or cause him physical injury. The trial court Then stated that it would issue an order after reviewing the eases submitted. On April 12, 1996,’ the trial court issued a written order revoking the appellant’s probation for having committed the offense of being in possession of a pistol after having been convicted of a crime of violence, specifically, burglary in the *1004 third degree.[1] In his-order, the trial court stated:
“The Court must reject defense counsel’s argument that .the State must prove that the underlying burglary was a crime of violence under the circumstances here present. The State did not establish again the facts underlying Defendant’s present conviction for Burglary in the Third Degree. The indictment, Defendant’s plea agreement and colloquy with the Court established, to the reasonable satisfaction of the Court, that the Defendant acted in complicity with his co-defendants in entering Pleasant Home School and taking in excess of $25.00 in coins and money changers from vending machines. These events were the basis of his plea in the case sub judice, and constitute the conduct for which he is on probation. Upon examining Sections 86, 172 and 174 of the Code of Alabama 1940, the Court is of the further opinion that such conduct constituted burglary in the second degree at the time the predecessor of present Section 13A-11-70(2) was enacted, and does constitute a crime of violence under current law.”
Neither the appellant’s indictment, plea agreement, nor colloquy concerning this underlying charge and conviction appear in the record; nor is there any indication in the record that these documents were introduced into evidence at the revocation hearing.
I.
The appellant argues that the trial court erred in revoking his probation based on the charge that he was in possession of a pistol after having been convicted of a crime of violence, because, he argues, there was no proof that his prior conviction for burglary in the third degree constituted a crime of violence. Section 13A-ll-72(a), Code of Alabama 1975, provides that “no person who has been convicted in this State or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his or her possession or under his or her control.” A “crime of violence” is defined for the purposes of this section by § 13A-11-70, Code of Alabama 1975, as follows:
“Any of the following crimes or an attempt to commit any of them, namely, murder, manslaughter (except manslaughter arising out of the operation of a vehicle), rape, mayhem, assault with intent to rob, assault with intent to ravish, assault with intent to murder, robbery, burglary, kidnapping and larceny.”
The language in these two statutes was also in the statutes in effect prior to the enactment of the new Criminal Code; therefore, an offense that had previously been labeled as a “crime of violence” may not be a crime of violence under current law. This has especially been noted in those cases involving offenses that would be included in the “crime of violence” categories of larceny and burglary.
The crime of which the appellant was originally convicted, burglary in the third degree, is defined by § 13A-7-7, Code of Alabama 1975, as follows:
“A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.”
However, under the predecessor Criminal Code there was no offense of third-degree burglary and second-degree burglary was defined by Title 14, § 86, Code of Alabama 1940 (Recompiled 1958), as follows:
“Any person who in the daytime, with intent to steal or to commit a felony, breaks into and enters any inhabited dwelling house or any other house or building which is occupied by any person lodged therein, or any person who either in the nighttime or daytime, with intent to steal or to commit a felony, breaks into and enters any uninhabited dwelling house, or any building, structure or enclosure ... is guilty of burglary in the second degree and shall on conviction be imprisoned in the penitentiary for not less than one year, nor more than ten years.”
Thus, there are a number of situations in which a conviction for third-degree burglary under the present statute would not have been a burglary under the earlier burglary statute.
*1005 In Ex 'parte Johnson, 620 So.2d 665 (Ala. 1993), the Alabama Supreme Court noted that a “critical element” of the offense that seeks to prohibit a person who, has been convicted of committing or attempting to commit a crime of violence from possessing a pistol is that the defendant has had a prior conviction for “committing or attempting to commit a crime of violence.” Id. at 666-67. In Ex parte Johnson, the State attempted to prove this element by introducing evidence that the defendant had been convicted of burglary in the third degree. The State presented evidence only of the fact of these convictions, without proving that the offense would have constituted burglary under the predecessor statute. The Alabama Supreme Court reversed the judgment and rendered a judgment for Johnson, holding the State’s evidence was insufficient to prove this element, stating:
“Because what is now § 13A-ll-70(2) was enacted years before the new Criminal Code offenses were enacted, see Tit. 14, § 172(a), Code of Ala.1940, one cannot simply look to the name given an offense in the new Criminal Code provisions and conclude that it is synonymous with an older term found in § 13A-ll-70(2).” Id. at 667.
In Averhart v. State, 636 So.2d 1280 (Ala.Cr.App.1994), the defendant had been convicted of possession of a firearm after having been convicted of a violent crime, i.e., first-degree robbery. This Court held that the State did not present sufficient evidence that the act underlying the first-degree robbery would have been embraced in the old definition of larceny, as indicated as a “crime of violence.” This Court stated:
“Thus, the prosecution had the burden of showing that Averhart’s conviction for first degree theft, as that term is defined by the new Criminal Code, embraced an act considered to be a ‘crime of violence’ as that term was intended by the legislature in enacting what is now § 13A-11-70. Id. We do not consider the mere fact that Averhart was indicted for first degree robbery constitutes proper evidence of his having been convicted for acts embraced by the old definition of larceny.”
Averhart v. State, supra at 1282.
In the present ease, there is no indication in the record that the State met its burden of proof in showing that the acts underlying the appellant’s prior third-degree burglary conviction would have constituted a burglary before the new Criminal Code so as to be included in the language defining a “crime of violence.”' Therefore, thé trial court acted improperly in revoking the appellant’s probation on this ground.
II.
The State argues that, even if the trial court improperly revoked the appellant’s probation on the grounds that he committed the offense of possessing a firearm after having been convicted of a crime of violence, the trial court also revoked the appellant’s probation on the grounds that he committed the offense of menacing, which was sufficiently proven by the evidence admitted at the hearing. However, a review of the trial court’s written order indicates that the trial court revoked probation only on the ground of the former charge, and made no reference to the offense of menacing. The State refers to boilerplate language included as part of the form, which indicates the probation was being revoked on one or more offenses, to show that the trial court was also acting on the menacing charge; however, the trial court’s entry and findings do not support that allegation. See Baxter v. State, 936 S.W.2d 469 (Tex.App.1996) (where the judgment reflected that the appellant’s probation was revoked because of his violation of a specific rule, but the allegations of this violation had been abandoned by the State, the revocation could nonetheless be affirmed as “[tjhere was another ground for revocation set out in the judgment that also formed the basis for the revocation.” Id. at 472-73.) See also Hansen v. Wainwright, 493 So.2d 38 (Fla.App. 1986) (where one of the grounds for the appellant’s parole revocation, which was based on felony arrests for sexual battery, was unconstitutional because of a procedural defect, the revocation was nonetheless proper, because the warrant and the revocation proceedings also charged the appellant with the technical parole violation of carrying a weapon without securing consent of his parole supervisor).
*1006 However, the State did present evidence in this probation revocation hearing that would have supported the charge of menacing. “A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.” § 13A-6-23, Code of Alabama 1975. “Menacing encompasses the situation where ‘ “physical injury” is neither inflicted nor intended.’ Commentary, § 13A-6-23, Code of Alabama 1975.” Nelson v. State, 595 So.2d 506, 510 (Ala.Cr.App.1991), rev’d on other grounds, 595 So.2d 510 (Ala.1991). The Commentary to § 13A-6-23 also states:
“Apparently, under caselaw, the previously existing assault statutes did not cover the mere creation of apprehension in a complaint of being harmed, where defendant did not actually intend an injury, or there was insufficient means, or no present ability, to accomplish the believed harm. The classic example is where defendant, intending to frighten another, points an unloaded gun at him, though not known by the victim to be so. Chapman v. State, 78 Ala. 463 (1885) (aiming unloaded gun in a menacing manner so as to terrify complainant not criminal assault; must be a present intention, as well as present ability).
“Technically, such conduct, though culpable, does not constitute either assault or attempted assault under the Criminal Code, for ‘physical injury’ is neither inflicted nor intended. Accordingly, § 13A-6-23 would cover this area of conduct. ‘Menacing’ is committed by intentionally placing or attempting to place another in fear of imminent serious physical injury.”
In the present case, the State presented evidence that the appellant brandished a pistol, while threatening the lives of the six juveniles present, as well as that of a seventh juvenile who was not present. The juvenile witness testified that he was afraid when the appellant directed his threats to include the boys as victims.
Because there was insufficient evidence presented by the State to support the revocation on the singular ground found by the trial court, we are reversing the trial court’s revocation order and remanding this cause for a new probation revocation hearing, following which, if the trial court concludes that the appellant has violated his probation, it should enter a written order containing its specific reasons for revoking the appellant’s probation. See Hall v. State, 681 So.2d 247 (Ala. Cr.App.1995); Clayton v. State, 669 So.2d 220 (Ala.Cr.App.1995). Cf. cases wherein appellate courts may enter judgment although evidence was found insufficient, where the evidence supported a lesser included offense on which the jury had been charged.
REVERSED AND REMANDED.
All judges concur.

. This order was signed by the trial judge on May 3, 1996.